THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* JUAN DE JESÚS HUERTAS, Defendant and Appellant.

No. 15268. Argued September 1, 1952.—Decided September 17, 1952.

*Guillermo S. Pierluisi* for appellant. *Víctor Gutiérrez Franqui,*
*Attorney General, (Juan B. Fernández Badillo, Acting*
*Attorney General,* on the brief) and *J. Rivera Barreras,*
*Fiscal of the Supreme Court,* for appellee.

MR. JUSTICE ORTIZ delivered the opinion of the Court.

Juan de Jesús Huertas was accused and convicted by the
extinct District Court of Bayamón of a violation of § 10 of
Act No. 220, approved May 15, 1948, known as the *Bolita*
Act. Previously, and by virtue of a search warrant, the
home of the defendant had been searched, and upon execu-
tion thereof, a bag containing *bolita* material was seized in
the person of Pedro López, who was inside the house.

Five days before the trial, defendant filed a motion chal-
lenging the validity of the search which resulted in the
seizure of the afore-mentioned *bolita* material which was
subsequently introduced in evidence. Said motion was dis-
cussed at the trial before introducing the evidence. The
court *a quo* overruled it and immediately thereafter the

People introduced its evidence. The defendant introduced none. The lower court found defendant guilty and the latter has appealed to this Court. Defendant alleges that the court *a quo* erred in overruling his motion challenging the search and in deciding that the evidence introduced by the People was sufficient to find defendant guilty.

■ On August 20, 1951, José M. Padilla, Corporal of the Insular Police, presented an affidavit in the extinct Municipal Court of San Juan, which read in part as follows:

"In San Juan, Puerto Rico, on the 20th of August nineteen hundred and fifty-one, before this Court appears José M. Padilla, Corporal, Insular Police, of legal age, a resident of Guaynabo, Puerto Rico, and upon taking an oath pursuant to law states:

"My name and other personal circumstances are the above-mentioned.

"I know John Doe personally, light brown, about 45 years old, thin, of medium height, known as Juande.

"I know of my own knowledge that he lives in Pájaro Ward of Bayamón, Aldea place, at the side of the road which leads from Bayamón to Comerío, in kilometer 2, hectometer 9 of said road to the left going from Bayamón to Comerío in a one-story concrete house, concrete roof, which he owns and which has a half porch in the front with an entrance door, and a window also in the front; this house has three windows on each side and the kitchen in the rear, having two doors one on each side; this house has the windows painted dark brown, the walls of the half porch are painted green, it has a red-tile drainage above the half porch; it is bounded in the front by a road which leads from Bayamón to Comerío, at kilometer 2, hectometer 9 to 10; facing the house on the left, it is bounded by a lot containing debris of an old concrete house and a big mango tree; facing the house on the right there is an almond tree very close to the house and an empty lot; on the rear it is bounded by the yard of said house and farm.

"Yesterday August 19, 1951, sometime in the morning, I saw John Doe, light brown, about 45 years old, thin, of medium height, known as Juande at his home residence manipulating some paper lists having numbers for the illegal game of *bolita*, which I saw him carry inside the house above described."

On that same day, August 20, 1951, a judge of said Municipal Court of San Juan issued the corresponding search warrant, the dispositive part of which reads as follows:

"THIS COURT HAVING FOUND in the manner stated above that there exists probable cause that John Doe, light brown, about 45 years old, thin, of medium height, known as Juande, keeps and manipulates inside his home above described, located in Pájaro Ward of Bayamón, Aldea place, at the side of the road which leads from Bayamón to Comerío, in kilometer 2, hectometer 9 to 10, of the said road, *bolita* material, consisting of paper lists with numbers for the illegal game of *bolita,* violating thereby Act 220 of May 15, 1948, as amended, you are hereby ordered, at any time of the day or night, to search as soon as possible the house of John Doe above described, located in Pájaro Ward of Bayamón, Aldea place, in search of *bolita* material, consisting in lists of papers with numbers for the illegal game of *bolita,* in search of money collected from the illegal game of *bolita* and any other objects or materials which are being used in the unlawful *bolita* game, and if you find the same or any part thereof, to bring it forthwith before me at the place, manner and mode stipulated by law.

"GIVEN UNDER MY HAND, on this 20th day of August, 1951.

"Signed: José Pablo Morales, Justice of the Peace of the Municipal Court of Puerto Rico, San Juan Section, Section 2."

The return of the search warrant read:

"I, José M. Padilla, CERTIFY: that on August 25, 1951, pursuant to the order which appears on the other side of this paper I proceeded to search the home of JUAN DE JESÚS, known as Juande, located in Pájaro Ward of Bayamón, in la Aldea, in the presence of Don Luis M. Pérez, and Don Juan A. González in search of *bolita* material, seizing inside said house on the person of PEDRO LÓPEZ, resident of Bayamón, a paper bag containing a great number of paper lists with numbers for the unlawful game of *bolita,* at the time that he was delivering it to Juan de Jesús, known as Juande, owner of the house searched. The house was carefully searched by the officers who executed the warrant but no other *bolita* material except the above-men-

tioned was found. Said *bolita* material was seized by Lieutenant Salvador Ríos who took part in the execution of said warrant.

"Signed: José M. Padilla, Corporal Insular Police.

"I, José M. Padilla, a police officer, who executed this search warrant DO SWEAR that the above inventory contains a true and detailed account of all the property taken by me in execution of the warrant.

"Signed: José M. Padilla

"Sworn to and subscribed before me this 20th day of August 1951.

"Signed: José Pablo Morales, Justice of the Peace of the Municipal Court of Puerto Rico."

Appellant alleges first, that the search warrant authorized the search of defendant's house at any time of the day or night, and under the provisions of § 511 of the Code of Criminal Procedure, it may only be executed if it may be positively ascertained from the affidavits that the property sought is in the place to be searched. In the return of the search warrant it is not indicated whether the search was executed in the daytime or nighttime, but during the course of the trial it was set forth that it had been at night.

The afore-cited § 511 provides that a direction may be inserted in the search warrant, that it be served in the daytime or at night if the affidavits on which the warrants are based show positively that the property is in the place to be searched.

In *People* v. *Negrón*, 72 P.R.R. 825, 828, it is set forth that said provision of § 511 is duly fulfilled if affiant is "positive" of the location of the objects of the proposed search at the time he became aware of the facts. Really, the positiveness to which § 511 refers is not only as to the place where the property is but also as to the fact itself that the property be in the place to be searched. In the case at bar it appears from Corporal Padilla's affidavit that he was positive that the property was at the home of the defendant.

*People* v. *Negrón, supra; People* v. *Tonje,* 71 P.R.R. 295 and *People* v. *Yulfo,* 71 P.R.R. 767.

■■ Appellant alleges that from the return of the warrant it does not appear that the seizure of evidence was executed inside the very house of appellant, but that the *bolita* material was seized in the person of Pedro López, without any search warrant being authorized as to the latter. In *People* v. *Rodríguez,* 70 P.R.R. 488, it was held that where a search warrant is issued to search the house of a person and the evidence sought—material of the game of *bolita*—is seized from another person who came out of the house at the time of the search, the seizure of such evidence is valid. It is stated in the opinion:

"If the search made in this case were not held legal, a great number of search warrants would be made a mockery, for the illegally possessed material, could easily be taken out of the premises sought to be searched at the moment the search is being made, . . ."

In this last case the person who came out running with a package in his hand containing *bolita* material was the one accused and he was also the one who challenged the warrant and the seizure of the evidence. The *ratio decidendi* of the case contains two elements: (1) that the search of the person was legal, since she was trying to escape while unlawfully carrying *bolita* material and (2) that the validity of the search be sustained in order to reduce the probability of evasion of search warrants. The question involved in the case at bar is somewhat different from that raised in *People* v. *Rodríguez, supra.* Here defendant alleges that the search warrant is void because the evidence was seized in the possession of a third person not mentioned in the search warrant. It is not the third person who questions the validity of the process, nor is the validity of the search directly involved from the point of view of the third person—Pedro López in this case. However, in the return of the search warrant

Corporal Padilla sets forth under oath that Pedro López was found, inside the house of defendant, with a bag containing paper lists with numbers for the unlawful game of *bolita*, at the time that he was delivering it to defendant. This linked defendant with the material used in the *bolita* game and, therefore, the possession of this material by Pedro López under the attendant circumstances should be attributed to defendant, and the seizure of said material in the person of Pedro López must be considered as a seizure of the property while in the possession of defendant.[1]

■■ Appellant contends that the search is void because it was not set forth in the warrant that the search should be executed within the term of ten days following the date of its issuance. In this case, it was stated in the order that the search be executed "as soon as possible." The warrant was issued on August 20, 1951. In the return it is set forth that the search was served on August 25 of that same year. Appellant is not correct.

Section 512 of the Code of Criminal Procedure, provides that a search warrant be executed and returned within ten days after its date. It does not say that this shall be set forth in the warrant itself. What is really essential is, to actually comply with the execution of the warrant within the statutory period of ten days. It is not necessary that in the warrant it be formally set forth that the search must be executed within the ten days if, as a matter of fact, said

---

[1] During the trial Corporal Padilla testified, in a form apparently contrary to what he had set forth in the return of the warrant, that the policemen had seized Pedro López while he was trying to escape, inside the parlor of the house. On the other hand, Pedro López testified that when the policemen arrived he was delivering the *bolita* collect to defendant and he then tried to escape when he saw the policemen. At any rate, for the purpose of the validity of the search warrant the averments contained in the affidavit must be considered as true, and they may not be questioned by testimony contrary thereto. (*People* v. *Villariny*, 71 P.R.R. 694 and see the annotation in 5 A.L.R. (2d) 394.)

search has been executed within that period of time. (*People* v. *Mantilla,* 71 P.R.R. 35, 50; *People* v. *Báez,* 70 P.R.R. 578, 581 and *People* v. *Tonje, supra.*)

Appellant alleges that notwithstanding the fact that Corporal Padilla stated that he executed the warrant on August 25, 1951, he appears swearing the return on August 20. It is obvious that this is a mere clerical error which does not affect the reality which appears from the very return.

The second assignment consists in defendant's averment that the evidence introduced by the government is insufficient to support a conviction. It is specifically set forth that the testimony of the accomplice Pedro López was not duly corroborated. It was admitted that Pedro López was an accomplice and that his testimony, by itself, accuses defendant. Besides witness Pedro López, witnesses Miguel García Alvarez and the Corporal of the Insular Police José M. Padilla, also testified for the government. Defendant did not introduce any evidence whatsoever.

Witness Miguel García Alvarez substantially testified the following on direct examination:

"He knows defendant by sight; on an occasion that the witness was going by, defendant gave him a package for him to carry to a certain place; witness did not know what the package contained; he did not open the package; 'he gave it to me to have it delivered to a son of Mrs. Andino; and the other man is Julio Andino and to Luis García Vargas, *the books were for those people'* (italics ours) ; the witness took out of the package and delivered the books to those persons; the package contained some books; those books were for the combination of *bolita.*"

On redirect examination, and after the cross-examination, witness testified that defendant had given him the package only on one occasion but that he did not get to deliver it since a policeman by the name of Torres surprised him with the package; witness was going along the road and defendant met him and gave him the package. Witness continued along the road on foot, and Torres the policeman sur-

prised him with the package; witness says that he did not know what it contained.

The district attorney showed him an affidavit previously subscribed by the witness himself before the district attorney, in which he sets forth that he worked with defendant since six months ago, but witness insisted at the witness stand that he did not work with defendant. The district attorney read his affidavit to the effect that on August 10, 1951, he was going along Cerro Gordo Ward of Bayamón with a paper bag containing 15 books in blank, with carbon paper and policeman Cristóbal Torres surprised him with the books, which he seized, and that defendant had given him those books. The witness then said that he did not know what the package contained but immediately admitted that defendant had given him those books to take them to those people, for the combination of *bolita*. Witness repeats that he did not know what the package contained. The court then asked him why he stated that it was to combine *bolita* and witness answered that he knew it because defendant had told him so.

Witness José M. Padilla, corporal of the Insular Police testified that on August 25, 1951, he searched defendant's house, at about seven or half past seven in the evening; defendant was at the parlor; Pedro López was trying to escape with a paper bag when a policeman seized him in the parlor and took the bag from him; defendant the following day testified at police headquarters in the presence of the witness, of Pedro López and of several policemen and he stated that he was an agent of a *bolita* bank; that he collected for a banker whom he did not know; that Pedro López Cintrón was a *bolitero* who delivered to him the *bolita* collections; that the collection seized on Pedro López was for him; that defendant was in charge of receiving the *bolita* material; that afterwards he received the money from that *bolita*; that he was also in charge of receiving the prizes and delivering

them to the *boliteros*. The witness stated that defendant had testified likewise before the district attorney and he continued saying that when the search was executed defendant was at the parlor of the house next to Pedro López.

The testimony of Miguel García Alvarez and Corporal Padilla tend to connect defendant with the commission of the crime and, therefore, constitute sufficient corroborative testimony. (*People* v. *Portalatín*, 72 P.R.R. 145 and *People* v. *Portalatín, ante,* p. 320.) It is true that Miguel García Alvarez' testimony was somewhat vague and unsubstantial. However, the lower court had the right to believe those parts of Alvarez' testimony which tended to connect defendant with the commission of the crime, having especially in mind that the weighing of the evidence made by the lower court has not been challenged.

It is alleged that Miguel García Alvarez was also an accomplice and that therefore, his testimony could not legally corroborate the testimony of the other defendant Pedro López Cintrón. The testimony of an accomplice can not serve to corroborate that of another accomplice. (*People* v. *Portalatín*, 63 P.R.R. 615 and 7 Wigmore, 3rd. ed., p. 326.) Really, witness García Alvarez testified that he knew the contents of the package that defendant gave him to deliver to other persons, and that it was *bolita* material since defendant himself had told him. Under these circumstances García Alvarez was not a mere instrument passive or innocent, of defendant. He consciously intended to help in the commission of a crime and, therefore was an accomplice. An accomplice is one who wilfully, knowingly, voluntarily and with intent, somehow joins in the commission of a crime, being, therefore, liable to prosecution for the same offense. (*People* v. *Rosado*, 72 P.R.R. 773.)

However, and independently of the testimony of García Alvarez, witness José M. Padilla, Corporal of the Insular Police, testified that defendant had made admissions in his

presence as to the commission of the crime. A confession, or admission by defendant constitutes by itself sufficient corroboration to the testimony of an accomplice. (*People* v. *Portalatín, supra,* and *People* v. *Feliciano,* 70 P.R.R. 834.)

The judgment appealed from will be affirmed.

Mr. Chief Justice Todd, Jr., did not participate herein.